## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **In re** | **Bankruptcy Case 09-10864 (BKT)** |
| **Vicky Rodríguez Torres**<br>Debtor | **CHAPTER 7** |
| **Vicky Rodríguez Torres**<br>Plaintiff | **Adversary Proc. 10-00137 (BKT-7)** |
| v. | **18 U.S.C. §1030**<br>**18 U.S.C. §2510**<br>**18 U.S.C. §2701** |
| **Enid López-López, Guillermo Camba-Casas,**<br>**Mariela Rexach Rexach, Government**<br>**Development Bank of P.R., et als.**<br>Defendants | **42 U.S.C. §1983**<br>**42 U.S.C. §1985**<br>**42 U.S.C. 1988**<br>**TORTS** |

### MOTION TO DISMISS

TO THE HONORABLE COURT:

COMES NOW, Co-Defendants, Puerto Rico Government Development Bank (hereinafter "GDB") and Mariela Rexach-Rexach (hereinafter "Rexach")[1], through their undersigned counsel, and, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, applicable to the present adversary proceeding by virtue of Rule 7012(b) of the Federal Rules of Bankruptcy Procedure, respectfully request the dismissal of the instant complaint for lack of jurisdiction and failure to state a claim upon which relief may be granted.

### INTRODUCTION

---

[1] As of this date, Co-defendant, Guillermo Camba Casas (hereinafter "Camba") has not been served with the summons and copy of the complaint as required by Rule 7004 of the Fed.R.Bankr.P. Evidently, the event titled as "Summons Service Executed", filed by Plaintiff at docket no. 5, does not constitute proper service of the summons and the complaint. See Fed.R.Bank. P. 7004. On the other hand, as to Co-defendant Enid López López (hereinafter "López"), she did receive the summons and copy of the complaint on September 7, 2010. That is, 29 days after the summons were issued by the Clerk of the Court. Consequently, Co-defendants Camba-Casas and López-López have not yet been able to request the benefits of Law No. 9 of November 26, 1975, which provides legal representation and payment of adverse judgments and legal expenses to government officers, ex-officers, employees and ex-employees, when sued for damages, in their personal capacity, for civil rights violations.

-2-

Plaintiff, Vicky Rodriguez ("Plaintiff" or "Rodriguez"), filed the present adversary complaint against the Puerto Rico Government Development Bank ("GDB" or "the Bank"), two of its officers, Guillermo Camba Casas ("Camba"), Director of Human Resources of the GDB, and Enid López López ("López"), Director of Municipal Financing, and Mariela Rexach Rexach ("Rexach"), the GDB's outside legal attorney who as acted as lead counsel in all claims filed by Vicky Rodríguez against the GDB.  The Complaint avers causes of action arising under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, the Wiretap Act, 18 U.S.C. § 2510, and the Stored Communications Act, 18 U.S.C. § 2701.  Plaintiff also asserts causes of action for alleged obstruction of justice pursuant 42 U.S.C. §1985, violations of due process by government officials and deprivation of her rights under color of state law, pursuant to 42 U.S.C. §1983 and, a claim for damages suffered as a result of alleged spoliation of evidence under articles 1802 and 1803 of the Puerto Rico Civil Code, 31 L.P.R.A. §§ 5141-5142.  All individuals are being sued in their personal capacities.

A cursory review of the present Complaint is all that is needed to confirm that it altogether fails to comply with the pleading standards set forth in Rule 8 of the Federal Rules of Civil Procedure and Rule 7008(a) of the Federal Rules of Bankruptcy Procedure.  While it does contain a discourse on Microsoft Exchange storage and operational capabilities, the Complaint altogether fails to specify the causes of action brought forth with any precision, let alone reference the specific statutory sections under which her motley claims are being raised.  As recently explained by the Supreme Court in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, ___ U.S. __, 129 S.Ct. 1937 (2009), Rule 8(a)(2) of the Federal Rules of Civil Procedure, applicable to this proceeding through Rule 7008(a) of the Federal Rules of Bankruptcy Procedure, "does not require [that] courts credit a complaint's conclusory statements without reference to its factual

-3-

context." Iqbal, 129 S.Ct. at 1954.     In order to survive a motion to dismiss, Rule 8(b) requires the complaint to "*show[]* that the pleader is entitled to relief."  Fed. R. Civ. P. 8(b) (emphasis added).  See Twombly, 550 U.S. at 557.  Conclusory recitations of legal standards, disguised as factual allegations are unavailing.  See Mullarkey v. Tamboer, Civ. No. 09-4518 (DRD), 2009 WL 5205963, at * 19 (D.N.J., Dec. 23, 2009).  What is necessary is "[f]actual allegations . . . enough to raise a right to relief above the speculative level" and show that the claim is "plausible" on its face.  Twombly, 550 U.S. at 555 & 570.

Plaintiff's complaint does nothing more than generally list a series of statutes as counts and generally aver that defendants violated the same.  Notably, Plaintiff's causes of action in the present Complaint are premised on testimony provided by López during the deposition Plaintiff took of her on August 26, 2009 during the course of discovery proceedings held in the case of Rodríguez v. Government Development Bank, Case No. 09-1151 (JP) (hereinafter "Rodríguez I"), before the United States District Court for the District of Puerto Rico, where, in response to a broad question (which was objected) she testified that, in the normal course of business, she had to delete e-mails to ensure her inbox did not become full.  This solitary piece of non-specific, and rather inconsequential,  testimony is the foundation of the present adversary proceeding as Plaintiff attempts to stretch the limits of plausibility by suggesting, through stereotyped and conclusory allegations, that this constitutes an "admission" of destruction of evidence which gives rise to causes of action under the referenced provisions.  More importantly, as is more fully detailed below, this same issue was actually litigated between the parties and adjudicated by the District Court in "Rodríguez I" in favor of the GDB and López.

-4-

Undaunted by the fact that the issue was resolved against her, Plaintiff now tries to re-litigate the same issue resorting to stereotyped and conclusory allegations that defendants conspired to destroy evidence and that such alleged destruction violates various federal statutes. It should be noted, however, that regardless of how many causes of actions are being asserted by Plaintiff, the gist of all of them is the already litigated issue of spoliation of evidence. Finally, as shown below, the causes of action brought by Plaintiff under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, the Wiretap Act, 18 U.S.C. §§ 1025 et seq., and the Stored Communications Act, 18 U.S.C. §§ 2701, et seq., are not only not well-plead and without merit, but also meretricious, inasmuch as these federal statutes are not meant to apply in this type of situation. The present Complaint not only fails to specify the basis of this Court's jurisdiction or whether the present proceeding is core or non-core, as required by Rule 7008 of the Federal Rules of Bankruptcy Procedure, it fails to state claims upon which relief can be granted inasmuch as plaintiff lacks standing, she has failed to plead plausible causes of action under all of the listed statutes and, more importantly, she is barred by the doctrine of collateral estoppel from pursuing the present Complaint.

**A.      Rule 12(b)(1) of the Federal Rules of Civil Procedure: Lack of Jurisdiction**

      **1.      Standard of Review**

Rule 12(b)(1) of the Federal Rules of Civil Procedure, applicable to the present proceeding by virtue of Rule 7012 of the Federal Bankruptcy Rules of Procedure, "permits a defendant to assert a claim that the Court lacks subject matter jurisdiction to entertain the action." Rivera v. Reno, 178 F. Supp. 2d 78, 79 (D.P.R. 2001). It is well settled law in our Circuit that "federal courts are not at liberty to overlook limitations on their subject matter jurisdiction." A.M. Francis v. Goodman, 81 F. 3d 5, 8 (1st Cir. 1996). "Thus, if the Court determines, as a threshold matter, that subject matter

jurisdiction does not exist, it must dismiss the case and not make any determination on the merits of the same." Menéndez v. United States, 67 F. Supp. 2d 42, 45 (D.P.R. 1999).

When ruling on a motion under Rule 12(b)(1) the court "must construe the complaint liberally, treating all well-pleaded facts as true and indulging all reasonable inferences in favor of the plaintiff." Fernández-Molinary v. Industrias La Famosa, Inc., 203 F. Supp. 2d 111, 114 (D.P.R. 2002) (citing Aversa v. United States, 99 F. 3d 1200, 1210 (1st Cir. 1996)); see also González v. The Ritz Carlton Hotel Co. of P.R., 241 F. Supp. 2d 142, 144 (D.P.R. 2003). It is well settled, however, that once a defendant challenges a court's subject matter jurisdiction, the plaintiff has the burden of establishing that such jurisdiction exists. See Puerto Rico Tel. v. Telecom. Regulatory Bd., 189 F. 3d 1, 7 (1st Cir. 1999); Bank One, Texas, N.A. v. Montle, 964 F. 2d 48, 50 (1st Cir. 1992). Once the Court determines that "subject matter jurisdiction is lacking, dismissal, not summary judgment, is the appropriate disposition." Rivera, 178 F. Supp. 2d at 79-80.

Moreover, in ruling on a 12(b)(1) motion, a court's inquiry is not limited to the face of the pleadings. In contrast to Rule 12(b)(6) motions, when deciding upon motions under Rule 12(b)(1), courts may look beyond the pleadings and consider evidence challenging and or supplementing the jurisdictional allegations. See Dynamic Image Technologies v. United States, 221 F.3d 34, 37 (1st Cir. 2000); Aversa, 99 F. 3d at 1210; Fernández-Molinary, 203 F. Supp. 2d at 114; see also 2 James Wm. Moore et al., Moore's Federal Practice ¶ 12.30[3] (3d ed. 1997). Thus, when a defendant challenges the jurisdiction of the court under Rule 12(b)(1), the plaintiff is required to present whatever evidence is necessary to establish that jurisdiction exists. See New Mexicans for Bill Richardson v. Gonzales, 64 F.3d 1495, 1499 (10th Cir.1995).

-6-

## 2.    Jurisdiction of the Bankruptcy Court

The jurisdiction of the bankruptcy court, like that of any other federal court, is limited by statute. Section 1334(b) of Title 28 provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or 'related to' cases under title 11." These types of proceedings are further delineated as "core" or "noncore." Because of the constitutional limits imposed upon bankruptcy court jurisdiction, distinguishing between core and non-core proceedings is vital to the exercise of jurisdiction by a bankruptcy court. A bankruptcy court may hear and finally determine all core bankruptcy proceedings; the parties' agreement is not needed. See 28 U.S.C. § 157(b). In non-core "related to" proceedings, however, only the district court may enter final orders absent consent of the parties. See 28 U.S.C. § 157(c).

At the outset, Plaintiff's complaint does not contain any statement as to the core or non-core nature of this adversary proceeding. This constitutes a violation of Rule 7008(a) of the Federal Rules of Bankruptcy Procedure which requires a complaint to "contain a statement that the proceeding is core or non-core, and if non-core . . . ." We respectfully submit to the Court this is not just a technical flaw. A reading of the Complaint reveals it is clearly a non-core/non-related adversary proceeding over which this court lacks subject matter jurisdiction. Alternatively, in the event that this Honorable Court determines that non-core "related to" jurisdiction exists, Defendants do not consent to the entry of final orders by the Bankruptcy Court.

As noted above, in noncore matters, bankruptcy courts are precluded from making final determinations absent consent of the parties. See 28 U.S.C. § 157(c)(2). See ,e.g., Spookyworld v. Town of Berlin (In re Spookyworld), 266 B.R. 1, 6 (Bankr.D.Mass.2001). In essence, "[n]oncore issues are state or federal claims that arise between parties within a bankruptcy proceeding. They are

claims that do not stem from the [Bankruptcy] Code itself. . . [and which] would [ostensibly] survive outside bankruptcy, and, in the absence of bankruptcy, would have been initiated in a state or district court." Ralls v. Docktor Pet Centers, Inc., 177 B.R. 420, 424-25 (D.Mass.1995). Disputes arising from prepetition events are often non-core. Id., at 425.

The present adversary proceeding relates to defendant's alleged pre-petition conduct. See Complaint at ¶¶ 21-28. It is evident from the face of the Complaint that none of Plaintiff's causes of action stem from the Bankruptcy Code and, thus, in the absence of bankruptcy, would have been initiated in the federal district court or local courts. Therefore, for jurisdictional purposes, it is clear that the present complaint is non-core. The question then becomes whether the present proceeding is "related to" the bankruptcy case. If it is not, then the Bankruptcy Court lacks jurisdiction to consider the present complaint. If it is, then this court may exercise its jurisdiction, but, absent consent of the parties (which defendants have not provided), it may only issue proposed findings of fact and conclusions of law, not final orders. See 28 U.S.C. §157(c)(1)-(2).

### 3.    "Non-Core, related to" jurisdiction

The touchstone of "related to" jurisdiction is the Third Circuit's decision in Pacor, Inc. v. Higgins, 743 F.2d 984 (3rd. Cir. 1984). Under Pacor, a matter is related to a bankruptcy case, for jurisdictional purposes, if "the outcome of the proceeding could conceivably have an effect on the estate being administered in bankruptcy. The proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." Id., at 994. In the

-8-

context of chapter 11 cases, the First Circuit recognized the <u>Pacor</u> test in <u>In re G.S.F. Corp.</u>, 938 F.2d

1467, 1475 (1st Cir.1991) and in <u>In re VideOcart, Inc.</u>, 165 B.R. 740 (Bankr. D.Mass., 1994).

In <u>Celotex Corporation v. Edwards</u>, 514 U.S. 300 (1995), the United States Supreme Court

also agreed with the test enacted by the Third Circuit in <u>Pacor</u>, but not without noting that "a

bankruptcy court's 'related to' jurisdiction cannot be limitless." <u>Id.</u> at 308. We submit that, in doing

so, it acknowledged, within the context of "related to" jurisdiction, a distinction between the

jurisdiction afforded in Chapter 11 cases, which is broader than that afforded in Chapter 7 cases. <u>Id.</u>

at 310.

Beyond the fact that the Complaint does not allege the nature of this Court's jurisdiction,

Plaintiff's allegations are, if anything, more akin to those presented in case of <u>In re Kreps</u>, where

the Bankruptcy Court found jurisdiction was lacking.  293 B.R. 719, 722 (Bkrcy. N.D. Ohio, 2002).

In <u>Kreps</u>, a Chapter 7 debtor, who was named as defendant in a bankruptcy proceeding arising out

of judgments previously entered against him in state and federal court, filed a third party complaint

against judges, attorneys and other parties who allegedly conspired to violate his civil rights in the

earlier state and federal court litigation.  Among the defenses raised by the third-party defendants

was lack of subject-matter jurisdiction.  The court granted the motion to dismiss filed by the third-

party defendants and, with respect to the argument regarding lack of subject matter jurisdiction, it

held that purely non-core [non-related] proceedings are outside the scope of the bankrutpcy court's

jurisdictional authority.  To such effects the court identified the following elements to determine

whether the proceeding is non-core (non-related): (1) the proceeding is not specifically identified as

a core proceeding under § 157(b)(2); (2) the proceeding existed prior to the filing of the bankruptcy

case; (3) the proceeding exists independent of the provisions of Title 11; and (4) the proceeding is

-9-

not one in which the parties' rights, obligations, or both are significantly affected as a result of the filing of the bankruptcy case. See id. As in the present case, the allegations in Kreps referred to civil rights violations, criminal conduct and conspiracy allegations.  The Kreps' court held that such matters clearly arose outside of the context of the bankruptcy case, and thus did not involve any substantive bankruptcy right. Moreover, the court explained that resolution of such issues would not have any effect the bankruptcy estate.  As such, the court held it was clear that the allegations raised in the third-party Complaint filed by Mr. Kreps were non-core proceedings over which the bankruptcy court lacked jurisdiction. See id. at 721-22.

In the present case, Defendants respectfully submit that, as in Kreps, Plaintiff's allegations implicate matters outside the scope of the bankruptcy court's jurisdiction, even under non-core "related to" jurisdiction. Furthermore, under Pacor's "any conceivable effect" standard, Defendants fail to see what conceivable effect  the outcome of this proceeding could have on the estate being administered, particularly since, as further described below, Plaintiff has failed both to state claims upon which relief can be granted and to comply with Rule 8's well-pleaded complaint requirements. As such, the outcome of the present complaint would not "alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) [nor] in any way impact the handling and administration of the bankruptcy estate." See Pacor, 743 F.2d at 994.

In view of the above, Defendants respectfully request this Honorable Court to find this proceeding to be non-core/non-related and, consequently, to dismiss the present complaint in its entirety, for lack of subject matter jurisdiction.

-10-

**B.    Rule 12(b)(6)**

　**1.    Standard of Review**

　　When ruling on a motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must accept all well pleaded factual averments as true and must draw all reasonable inferences in plaintiff's favor. See Berenzi v. Regency Sav. Bank, 234 F.3d 68, 70 (1st Cir. 2000); Negrón-Gaztambide v. Hernández-Torres, 35 F.3d 25, 27 (1st Cir. 1994). To this effect, "[a] complaint must set forth factual allegations either directly or inferential respecting each material element necessary to sustain recovery under some actionable legal theory." Berner v. Delahanty, 129 F.3d 20, 25 (1st Cir. 1997). See also Roth v. United States, 952 F.2d 611, 613 (1st Cir. 1991) (stating that a plaintiff is obliged to allege facts regarding each essential element necessary to entitle him to recovery). A litigant has a duty to spell out his theories clearly and distinctively before *nisi prius* court on pain of preclusion. See Mack v. Great Atlantic and Pacific Tea Company, 871 F.2d 179, 183 (1st Cir. 1989).

　　The Supreme Court of the United States explained in Bell Atlantic v. Twombly, that Rule 8(a)(2)'s threshold requirement of "a short and plain statement" must "possess enough heft to 'sho[w] that the pleader is entitled to relief.'"  550 U.S. 544, 557 (2007).  In Ashcroft v. Iqbal, it added that, while Rule 8 does not require detailed factual allegations, it "demands more than an un-adorned, the-defendant-unlawfully-harmed-me accusation." __U.S.__, 129 S.Ct. 1937, 1949 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1949-51. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Twombly,

-11-

550 U.S. at 1955-56). Courts need not give credence to conclusions from the complaint or naked assertions devoid of further factual enhancement. See Iqbal, 129 S. Ct. at 1949; see also Maldonado v. Fontánes, 568 F.3d 263, 266. Where, as in this case, "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]' that the pleader is entitled to relief." Iqbal 129 S. Ct. at 1950 (citing Fed. R. Civ. P. 8(a)(2)).

Plaintiff's allegations in the Complaint, based on conjecture and devoid of factual support, are not entitled to any credence and need not be accepted as true for purposes of the Court's Rule 12(b)(6) analysis. Simply put, "the Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context." Id. at 1954. A review of the transcript of the deposition referenced at paragraphs 21-22 of the adversary complaint reveals plaintiff's allegations regarding López' testimony are, in effect, completely specious and meant to mislead this Court. When ruling on a Rule 12(b)(6) motion to dismiss, a district court is generally limited to considering "facts and documents that are part of *or incorporated into the complaint*." Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 321 (1st Cir.2008) (emphasis added). Thus, a district court may also consider "documents incorporated by reference in [the complaint], matters of public record, and other matters susceptible to judicial notice." In re Colonial Mortgage Bankers Corp., 324 F.3d 12, 20 (1st Cir.2003). See also Giragosian v. Ryan, 547 F.3d 59, 65 (1st Cir., 2008).

In the instant case, plaintiff's factual references are exiguously limited to what transpired during the deposition taken of López on August 26, 2009. What is truly astonishing, however, is Plaintiff's and her counsel's mendacity regarding the questions posed during that deposition and the

-12-

answers provided.  Contrary to Plaintiff's contentions, the question was not posed as stated in

paragraph 21, and the answers provided were not as related in paragraphs 25 thru 28.  A review of

the pertinent portions of the deposition, which, as discussed above, is appropriate insofar as the

Complaint incorporates the same by express reference, reveals Plaintiff's evident effort to mislead

this Court.  The exact question posed to López was: "Did you delete any e-mail from your

computer?" and her answer (after an objection from attorney Mariela Rexach to the form of the

question) was: "Well, I had to have deleted some, because otherwise the e-mail in-box becomes full,

and I am unable to receive e-mails."  See Exhibit A at 70 *(lines 21-25)* - 71 *(lines 1-2)*.[2]  No further

questions were asked regarding this matter.  See id.  López was nowhere asked why she had failed

to disclose or produce e-mail communication (see ¶ 22 of the Complaint), she did not admit anything

regarding a failure to retain electronic copies of e-mails related to scheduling of trainings (see ¶ 24

of the Complaint), she never made a disclaimer that she would be unable to produce any e-mail

communications in native format that had been issued as recently as April 2008 (see ¶ 25 of the

Complaint), nor did she ever say that electronic documents were rendered permanently

unrecoverable  (see ¶ 26 of the Complaint).  Finally, nothing was said about Rexach during the

course of this deposition.

As if the foregoing misrepresentations to the Court were not enough, Plaintiff conveniently

disregards the fact that the District Court in Rodríguez already decided this controversy against her.

As noted by plaintiff at paragraph 22 of the Complaint, she brought this same "issue" to the attention

---

[2] For ease of reference, the transcript of López' deposition is being attached, in its entirety, as Exhibit A. However, due to electronic space limitations, the transcript has been divided into two different PDF's.

-13-

of the District Court as a Motion for Preservation and Request for Second Protective Order. See

Rodríguez I, Dkt. No. 135, Exhibit B.[3] The District Court denied her request and held:

> Plaintiffs fail to present this Court with any evidence tending to show that
> information has been lost in the process used by the Bank. Instead, they rely on the
> statements by Defendant López. As Defendants points out in its opposition, the
> statement by Defendant López that, in the ordinary course of business, she deletes
> emails to prevent her inbox from becoming full does not support the conclusion, by
> itself, that evidence has been destroyed since the Defendants had notice of the
> Plaintffs' case. Plaintiffs have not presented evidence that the Bank, upon receiving
> notice of the Plaitniff's claim, has destroyed any evidence.

Rodríguez I, Dkt. No. 169 at 3-4, Exhibit D.

Unsatisfied, plaintiff filed an interlocutory appeal, which was dismissed for lack of appellate

jurisdiction, see Rodríguez I, Dkt. No. 292, Exhibit E. And now, after her claim was dismissed and

final judgment entered, she has again raised the issue before First Circuit Court of Appeals. See U.S.

Court of Appeals for the First Circuit, Appeal No. 10-1441, Pl's Brief at 19-20, 57-65. This Court

can take judicial notice of these facts even under a Rule 12(b)(6) standard of review in order to

dismiss the Complaint for failure to state a claim upon which relief can be granted. To this effect,

Rule 201 of the Federal Rules of Evidence provides that "[a] judicially noticed fact must be one not

subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction

of the trial court or (2) capable of accurate and ready determination by resort to sources whose

accuracy cannot reasonably be questioned." Fed. R. Civ. Evid. 201 (b). Indeed, courts have

repeatedly recognized their authority to take judicial notice of cases pending in their own and other

courts' dockets. See, e.g., Balch v. Ohio Dept. of Rehabilitation and Corrections, 2:09-cv-00002,

2010 WL 1981001, at *3, n.1 (S.D. Ohio, May 18, 2010); Airframe Systems, Inc. v. Raytheon Co.,

520 F.Supp.2d 258, 262 (D.Mass., 2007); Castro v. U.S., 584 F. Supp. 252, 263 (D.P.R. 1984).

---

[3] For ease of reference, copies of the pertinent orders are also attached as exhibits to the present motion.

-14-

## 2.     Lack of Standing

Pursuant to § 541 of the Bankruptcy Code, when an individual files for bankruptcy, all of his or her property becomes property of the estate. See 11 U.S.C. § 541(a)(1) (providing that the bankruptcy estate includes "all legal or equitable interest of the debtor in property as of the commencement of the case"). Such property includes causes of action belonging to the debtor at the commencement of the bankruptcy case. See Barger v. City of Cartersville, 348 F.3d 1289 (11th Cir. 2003). To such effects, bankruptcy courts have consistently held that "[g]enerally speaking, a pre-petition cause of action is the property of the Chapter 7 bankruptcy estate, and only the trustee in àbankruptcy has standing to pursue it." See id. at 1292. In other words, the chapter 7 trustee, as the representative of the bankruptcy estate, is the proper party in interest, and *the only one* with standing to prosecute causes of action belonging to the estate. See 11 U.S.C. § 323; See Spenlinhauer v. O'Donnell, 261 F.3d 113, 118 (1st Cir. 2001); In re Rare Coin Galleries, Inc., 862 F.2d 896, 901 (1st Cir.1988)(holding the chapter 7 trustee "steps into the shoes of the debtor for the purposes of asserting or maintaining the debtor's causes of action and has exclusive standing to prosecute pre-petition claims). This principles also applies in the context of adversary proceedings. See, e.g., In re Bailey, 306 B.R. 391, 392 (Bkrtcy.D.Dist.Col. 2004). Since title to property of the estate no longer resides in the Chapter 7 debtor, the debtor typically lacks any pecuniary interest in the chapter 7 trustee's disposition of that property. Thus, it is the trustee alone, as distinguished from the chapter 7 debtor, who possesses standing. See Spelinhauer, 261 F.3d at 118.

Debtor filed for Chapter 7 bankruptcy on December 19, 2009. Thus, as it appears from the face of the Complaint, the conduct complained of is prepetition. See Complaint at ¶ 18. Consequently, the present claim belongs to the bankruptcy estate, and the appointed chapter 7 trustee

-15-

is the only party with standing to pursue debtor's alleged claims. Therefore, insofar as she lacks

standing to pursue this Complaint, plaintiff has failed to state a claim upon which relief may be

granted and the same should be dismissed.

### 3. Computer Fraud and Abuse Act

The CFAA is a federal statute generally intended to deter computer hackers. See Vanderhye

v. iParadigms, LLC, 562 F.3d 630, 645 (4th Cir. 2009). In general terms, it prohibits persons from

intentionally accessing a protected computer without authorization to obtain information, to commit

fraud, to cause damage or to extort. See 18 U.S.C. § 1030(a). Although it is primarily a criminal

statute, it permits private parties to redress violations to the Act's provisions. However, a civil

action for a violation of this section may be brought only if the conduct involves 1 of the factors set

forth in subclauses (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i). To wit:

> (I) loss to 1 or more persons during any 1-year period (and for purposes of an
> investigation, prosecution, or other proceeding brought by the United States only,
> loss resulting from a related course of conduct affecting 1 or more other protected
> computers) aggregating at least $5,000 in value;

> (II) the modification or impairment or potential modification or impairment, of the
> medical examination diagnosis, treatment or care of 1 or more individuals;

> (III) physicial injury to any person;

> (IV) a threat to public health or safety;

> (V) damage affecting a computer used for an entity of the United States Government
> in furtherance of the administration of justice, national defense, or national security;

> . . . .

18 U.S.C. § 1030(c)(4)(A)(I)-(IV). Damages for a violation involving conduct described in

subsection (c)(4)(A)(i)(I) are limited to economic damages. See 18 U.S.C. § 1030(g).

-16-

To bring a civil action under the CFAA, a plaintiff must allege both a violation of one of the subsections of Section 1030(a) and one of the listed factors in Section 1030(a)(4)(A)(i)-(v). See Res. Ctr. for Indep. Living, Inc. v. Ability Res., Inc., 534 F.Supp.2d 1204, 1210 (N.D.Ill.2008) (referencing sections as numbered before September 26, 2008 amendments to the Act); ResDev, LLC v. Lot Builders Ass'n, Inc., No. 6:04-CV-1374ORL31DAB, 2005 WL 1924743, at * 3 (M.D. Fla. Aug. 10, 2005). That it, she must show that the defendant (1) accessed a protected computer without authorization or in excess of that authorization and (2) caused damages aggregating at least $5,000.00. See 28 U.S.C. §§ 1030(a) & 1030(g); Mathew Andris, Comment, The Computer Fraud and Abuse Act: Reassessing the Damage Requirement, 27 J. Marshall J. Computer & Info. L. 279 (2009).

"[T]he CFAA does not define 'unauthorized access,' the idea, [however,'] seems clear: a person accesses a protected computer without authorization when (and only when) the person accesses the computer, and there is no purpose for which the person is authorized to access the computer." Richard Warner, The Employer's New Weapon: Employee Liability under the Computer Fraud and Abuse Act, 12 Employee Rts. & Emp. Pol'y J. 11 (2008). It does provide a definition for the term "exceeds authorized access" as meaning "to access a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled to so to obtain or alter." 28 U.S.C. §1030(e)(6). On its part, the term "damage" is defined by the Act to mean "any impairment to the integrity or availability of data, a program, a system or information." See 28 U.S.C. §1030(e)(8). Finally, "loss" is defined as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the date, program, system, or information to its condition prior to the offense, and any revenue lost, cost

incurred or other consequential damages incurred because of interruption of service." <u>See</u> 28 U.S.C. § 1030(e)(11).

Plaintiff's complaint does not include any factual averments as to the appearing defendants, let alone any one of the defendants, that would establish a violation based of the preceding definitions.   Based on nothing more than speculation, she suggests that López improperly gained access to highly protected information to incriminate communications which were adverse to her interests in the <u>Rodríguez I</u> litigation in violation of the CFAA. As per plaintiff's own allegation at paragraph 22 of the Complaint, López smoking-gun "admission" was to the effect that she had to routinely delete e-mails from *her own* in-box to prevent it from becoming full.  This statement does not show plaintiff's claim is plausible.  Plaintiff's inventive extrapolation that this somehow translates into López having exceeded her level of authorization to gain access to "highly protected information in the form of virtual space of the Exchange configuration" to "change software behavior and response to damage a protected computer or computer data" is precisely the kind of conclusory assertion which does not meet Rule 8(a)'s standard for a well-pleaded complaint.  <u>See</u> Complaint at ¶¶ 43-44. From the face of plaintiff's own complaint, and beyond her unsubstantiated conclusions which do not deserve any deference, López's routine deletion of e-mails to prevent her in-box from becoming full simply does not constitute the kind of unauthorized access which is prohibited by the FCAA but, rather is conduct well-within "the expected norms of intended use." <u>See</u> <u>United States v. Phillips</u>, 477 F.3d 215, 219 (5th Cir.2007).  Plaintiff nowhere suggests that López did not have authority to access her own e-mail account, nor to delete e-mails she herself sent or received in the ordinary course of business.  Plaintiff's factual allegations simply do not create a plausible inference that López accessed her computer authorization in violation of the CFAA.

-18-

Plaintiff's factual averments (as opposed to her legal conclusions), even if taken as true, do not present a picture which in any way differs from the normal baseline state of affairs associated with lawful conduct.

The Complaint alleges both that López's (1) access to her computer was unauthorized and (2) that it was also in excess of authorization, however,

> the difference between unauthorized access and exceeding authorized access matters. Sections 1030(a)(2) and 1030(a)(4) apply both to unauthorized access and to exceeding authorized access. These sections impose liability on anyone who intentionally accesses a protected computer either without authorization or in excess of authorization and obtains information (§ 1030(a)(2)) or, knowingly and with intent to defraud, furthers the intended fraud or obtains something of sufficient value (§ 1030(a)(4)). Sections 1030(a)(5)(ii) and (iii), on the other hand, apply only when access is unauthorized. Section 1030(a)(5)(ii) and (iii) imposes liability on anyone who accesses a protected computer without authorization and recklessly causes damage to the computer (§ 1030(a)(5)(ii)) or causes damage to the computer (§ 1030(a)(5)(iii)). The legislative history makes it clear that the point of omitting reference to exceeding authorized access in §§ 1030(a)(5)(ii) and (iii) is to limit the applicability of those provisions to "outsiders."

Warner, supra. The Complaint's failure to specify anything regarding the foregoing is fatal insofar as allegations premised on exceeding authorized access have additional requirements which plaintiff also fails to plead. More specifically, as to § 1030(a)(4) it has an element of fraud which, under Rule 9(b) of the Federal Rules of Civil Procedure, must be plead with particularly. Something the complaint clearly does not do. As to § 1030(a)(2), it fails to specify the information obtained, in order to give rise to a plausible inference of violation.

As to the GBD, Rexach (and also Camba), the Complaint does not state the conduct incurred which violates the Act. Instead, as to Rexach and Camba, plaintiff conclusively avers they "conspired" with López to violate the CFAA. However, to properly plead a civil conspiracy, a plaintiff must, at a bare minimum, allege the period, object and acts taken in furtherance of the

-19-

conspiracy.  See Humphrey v. John Doe Officer One, No. 1:09-cv-1689, 2010 WL 1576464, at *4

-5 (M.D.Pa., Apr. 20, 2010);  Grigsby v. Kane, 250 F.Supp.2d 453, 458 (M.D.Pa.2003) (holding that

plaintiff must allege the period, object, and acts taken in furtherance of a conspiracy to defeat a

motion to dismiss); Loftus v. Se. Pa. Transp. Auth., 843 F.Supp. 981, 986 n. 8 (E.D.Pa.1994) (citing

Black & Yates, Inc. v. Mahogany Ass'n, Inc., 129 F.2d 227, 231 (3d Cir.1941) ("A general allegation

of conspiracy without a statement of the facts is an allegation of a legal conclusion and insufficient

on itself to constitute a cause of action.").  The Complaint does neither.

The appearing defendants respectfully submit that Plaintiff's conclusory allegations regarding

the alleged conspiracy, entirely unsupported by specific factual allegations, are insufficient to render

her conspiracy charge against Rexach (or for that matter Camba) plausible. See Iqbal, 129 S.Ct. at

1949.  A general allegation of conspiracy will not withstand a Rule 12(b)(6) motion. See Twombly,

127 S.Ct. at 1966.  Such a legal conclusion must be supported by factual allegations. See Fowler v.

UPMC Shadyside, 578 F.3d 203, 210-11 (3rd Cir. 2009); Lind v. New Hope Property LLC, Civil No.

09-3757 (JBS/KMW), 2010 WL 1493003, at * 6(D.N.J., Apr. 13, 2010).

Finally, plaintiff has failed to establish "loss" as required by the Act.  A person can pursue

civil remedies if there was a loss to one or more computers aggregating $5,000.00 in damages, the

modification or impairment of medical treatment, physical injury, a threat to public safety, or damage

to a United States Computer used for national defense or national security. See 18 U.S.C. § 1030(g).

Plaintiff does not specify the subclass under which the alleged violation falls.  We can only presume

it is under subclass (I).  At any rate, under the Act's two-part injury requirement—that is, the root

injury under § 1030(a) and the operatively substantial effects under § 1030(a)(4)(A)(i)(I)-(V)—both

"loss" and "damage" are required in order to recover. See ResDev, LLC v. Lot Builders Ass'n, Inc.,

-20-

No. 6:04-cv-1374-Orl-31DAB, 2005 WL 1924743, at * 3 (M.D. Fla., Aug. 10, 2005); Thurmond v. Compaq Computer Corp., 171 F. Supp.2d 667, 678 (E.D. Tex. 2001); Andris, supra, at * 4.  The Act's definition of "loss," however, makes it evident that it must be suffered by the owner or user of the protected computer, and not by a third party purportedly interested in the information, such as plaintiff.  See Civic Cts Motors, Ltd. v. Mason St. Imp. Cars, Ltd., 378 F.Supp.2d 378, 382 (S.D.N.Y. 2005) (granting motion to dismiss for failure to state a claim upon a finding that "losses" under the CFAA are compensable only when they result from damage to, or the inoperability of, the accessed computer system and citing cases); Nexans Wires S.A. v. Sark-USA, Inc., 319 F.Supp.2d 468, 478 (S.D.N.Y.2004) (reviewing legislative history) See also EF Cultural Travel BV v. Explorica, Inc., 274 F.3d 577, 585 (1st Cir. 585) (noting that Congress intended the term "loss" to target remedial expenses borne by victims).  While at paragraph 45 of the Complain plaintiff generally avers damages, insofar as she did not have to "respond to the offense, conduct a damages assessment or restore data," from the face of the Complaint, she has not suffered the kind of "loss" required by the Act, and, therefore, fails to state a claim upon which relief may be granted.. See 18 U.S.C. §§ 1030(a)(5) & (a)(4)(A)(i)(I).

4.      **Electronic Communications Privacy Act**

The ECPA prohibits the intentional or willful interception of electronic communications. 18 U.S.C. § 2511. With the ECPA, Congress sought to provide more stringent protections to the contents of modem electronic communications from unauthorized and unwarranted interception than those provided by its precursor, Title III of the Omnibus Crime Control and Safe Streets Act, known as the Wiretap Act. See S. Rep. No. 99-541, at 1 (1986); Dorothy Higdon Murphy, United States v. Councilman and the Scope of the Wiretap Act: Do Old Laws Cover New Technologies?, 6

-21-

N.C.J.L. & Tech. 437, 441 (Spring, 2005). The ECPA's primary purpose was to extend the protections of wire and oral communications to a new category of electronic communications. See id.. Its operating prohibition reads: "any person who . . . intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication . . . shall be [criminally] punished . . . or shall be subject to [civil] suit." 18 U.S.C. § 2511(1) (2006).

The post-ECPA Wiretap Act provides a private right of action against one who "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication." 18 U.S.C. § 2511(1)(a). See also 18 U.S.C. § 2520 (providing a private right of action). The Wiretap Act defines "intercept" as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." Id. § 2510(4). Thus, in order to state a claim under Title I of the ECPA plaintiff's must show that a defendant (1) intentionally (2) intercepted, endeavored to intercept or procured another person to intercept or endeavor to intercept (3) the contents of (4) an electronic communication (5) using a device. This showing is subject to certain statutory exceptions, such as consent. See In re Pharmatrak, Inc, 329 F.3d 9, 18 (1st Cir. 2003).

Plaintiff's complaint does not allege that any one of the defendants intercepted anything, much less the requisite intent. See 18 U.S.C. § 2511(1)(a); Jessica Belskis, Applying the Wiretap Act to Online Communications after United States v. Councilman, 1 Shidler J.L. Com. & Tech. 18 (Apr. 14, 2006) (explaining the act requires proof of specific intent—i.e., a party must intentionally or recklessly disregard the law in order to be found liable). It similarly fails to identify the device used for such interception. As previously noted, all that plaintiff alleges is that López admitted to

-22-

routinely deleting e-mails in her in box to prevent it from becoming full.  Evidently, if they were in

her in-box, no interception could have taken place.  <u>Compare</u> <u>In re Pharmatrak</u>, 392 F.3d at 12 &

21 (finding interception requirement was met where service accessed information about internet

users and collected certain information meant to permit the pharmaceutical companies to do intra-

industry comparisons of website traffic and usage using "cookies").  Plaintiff, therefore, fails to state

a claim upon which relief can be granted under the ECPA and the same should be dismissed.

    **5.**    **The Stored Communications Act**

    As explained by the First Circuit Court of Appeals in <u>United States v. Councilman</u>:

> [w]hile drafting the ECPA's amendments to the Wiretap Act, Congress also
> recognized that, with the rise of remote computing operations and large databanks of
> stored electronic communications, threats to individual privacy extended well beyond
> the bounds of the Wiretap Act's prohibition against the "interception" of
> communications. These types of stored communications-including stored e-mail
> messages-were not protected by the Wiretap Act. Therefore, Congress concluded that
> "the information [in these communications] may be open to possible wrongful use
> and public disclosure by law enforcement authorities as well as unauthorized private
> parties." Congress added Title II to the ECPA to halt these potential intrusions on
> individual privacy. This title, commonly referred to as the Stored Communications
> Act ["SCA], established new punishments for accessing, without (or in excess of)
> authorization, an electronic communications service facility and thereby obtaining
> access to a wire or electronic communication in electronic storage.

418 F.3d 67, 80 -81 (1ˢᵗ Cir. 2005)(citing  S.Rep. No. 99-541, at 3 (1986)).

    "The purpose of the SCA was, in part to protect privacy interests in personal and proprietary

information and to address 'the growing problem of unauthorized persons deliberately gaining access

to, and sometimes tampering with, electronic or wire communications that are not intended to be

available to the public.'" <u>General Bd. of Global Ministries of the United Methodist Church v.</u>

<u>Cablevision Lightpath, Inc.</u>, CV 06-3669 (DRH)(ETB), 2006 WL 3479332, at *3 (E.D.N.Y. Nov.

30, 2006) (citing <u>Kaufman v. Nest Seekers, LLC</u>, 2006 WL 2807177, at *4 (S.D.N.Y. Sept. 26,

-23-

2006)). A defendant violates the SCA when he intentionally accesses his co-workers' email accounts without authorization. See Bloomington-Normal Seating Co., Inc. v. Albritton, No. 09-1073, 2009 WL 1329123, at *4 (C.D.Ill., May 13, 2009)

The SCA makes it an offense to "intentionally access[] without authorization a facility through which an electronic communication service is provided . . . and thereby obtain[] . . . access to a wire or electronic communication while it is in electronic storage in such system." 18 U.S.C. § 2701(a)(1). It requires proof of five elements: the access must (1) be to "a facility through which an electronic communication service is provided;" (2) be intentional; (3) exceed authorization; (4) "obtain, alter or prevent" a wire or electronic communication; and (5) involve a communication maintained in electronic storage in that system." 18 U.S.C. § 2701(a); Watch Sytems LLC v. System Design Solutions, Inc., No. 09-5821, 2009 WL 5217085, at * 3 (E.D. La., Dec. 31, 2009); Daniel B. Garrie & Rebecca Wong, Spyware Technologies: Limiting the Horizons of Digital Privacy, 23 T.M. Cooley L. Rev. 473, 494-95 (2006). The SCA excepts from liability, however, "conduct authorized ... by a user of that service with respect to a communication of or intended for that user." 18 U.S.C. § 2701(c)(2).

As was the case with Plaintiff's allegations under the CFAA and the ECPA, see Parts B.3. & 4, supra, the Complaint altogether fails to adequately plead facts in connection to the elements of a cause of action under the SCA which would make her contentions against each one of the defendants plausible as required by Rule 8(b) of the Federal Rules of Civil Procedure. From the face of the Complaint all that López accessed was her own e-mail account to delete her own e-mails in order to prevent it from becoming full. This simply does not constitute prohibited conduct under the

-24-

SCA. This claim should, therefore, similarly be dismissed for failure to state a claim upon which relief can be granted.

### 6.    Tort of Spoliation

Spoliation is the failure to preserve evidence that is relevant to pending or potential litigation. See Jimenez-Sánchez v. Caribbean Rest., LLC, 483 F.Supp.2d 140, 143 (D.P.R. 2007); Mosaid Techs,. Inc. v. Samsung Electronics Co. Ltd., 348 F.Supp. 2d 332, 335 (D.N.J. 2004). Imputations of spoliation of evidence generally arise in the context of requests for instructions regarding negative inferences against the "spoiling" party.

> This permissive negative inference springs from the commonsense notion that a party who destroys a document (or permits it to be destroyed) when facing litigation, *knowing* the document's relevancy to issues in the case, may well do so out of a sense that the document's contents hurt his position. Consistent with this rationale, a suitable foundation must exist before such an inference can materialize. Thus, the sponsor of the inference must proffer evidence sufficient to permit the trier to find that the target *knew* of (a) the claim (that is, the litigation or the potential for litigation), and (b) the document's potential relevance to that claim.

Testa v. Wal-Mart Stores, Inc.,144 F.3d 173, 177 (1st Cir. 1998) (emphasis added) (citing Beil v. Lakewood Eng'g & Mfg. Co., 15 F.3d 546, 552 (6th Cir.1994)) and Blinzler v. Marriott Int'l, Inc., 81 F.3d 1148, 1159 (1st Cir.1996)).

Because plaintiff's efforts to obtain a finding of spoliation from the District Court in Rodríguez I were denied, as discussed in Part B.9, infra, she vexatiously files the present adversary complaint notwithstanding the fact that there is no authority in Puerto Rico law that recognizes the tort of spoliation as actionable under Articles 1802 and 1803 of the Civil Code, nor is such an independent tort expressly recognized in the Restatements (Second) of Torts. Moreover, to date, only a small minority of jurisdictions have recognized spoliation of evidence as an independent tort, and the overwhelming trend in recent years has been to reject such a cause of action. Among those

-25-

states refusing to acknowledge such a tort are Alabama, Arizona, California, Georgia, Iowa, Kansas, Pennsylvania, and Texas. See Goff v. Harold Ives Trucking Co., Inc., 342 Ark. 143, 150, 27 S.W.3d 387, 391 (Ark.,2000) (listing cases); Carole S. Gailor, In Depth Examination of the Law Regarding Spoiation in State and Federal Courts, 23 J. Am. Acad. Matrim. Law 71 (2010).  Such a cause of action is even more limited against a first-party spoliator, where an independent tort is considered unnecessary because "sufficient remedies already exist to compensate the party injured by the negligent spoliation" including an adverse inference instruction and sanctions, such as those requested and denied by the District Court in Rodríguez I.  See Gagne v. D.E. Jonsen, Inc., 298 F.Supp.2d 145, 147 (D.Me., 2003) (finding the remedy for spoliation of evidence is sanctions not an independent cause of action);  Hannah v. Heeter, 584 S.E.2d 560, 567 (W.Va.2003); Miller v. Montgomery County, 494 A.2d 761 (Md. 1985) (holding that because the alleged spoliation of evidence was by a party to the lawsuit, and, therefore, if proved, would give rise to certain inferences against the spoliator, there was no basis or need for a separate torn action for intentional spoliation of evidence).  Importantly, plaintiff already attempted to benefit from these remedies within Rodríguez I, but the District Court decided against her.

Notably, as was the case in Rodríguez I, the adversary complaint nowhere identifies the evidence that what was destroyed, its relevance to Rodríguez I, or defendants' knowledge regarding its relevance to the case at the time of its alleged spoliation. Also telling is the absence of any factual allegation that could plausibly establish that defendants destroyed evidence so as to affect Rodríguez's ability to obtain a favorable judgment in Rodríguez I, nor does it articulate any particular intent or bad faith on the part of defendants to prejudice her. See Chapman v. Bernard's, Inc., 167 F.Supp.2d 406, 413 (D. Mass. 2001).  Also absent is any factual averments that would

-26-

plausibly show how this supposed destruction of evidence impacted her ability to obtain a favorable verdict in that case. This pleading failure is terminal to plaintiffs' contentions: spoliation of evidence cannot occur unless there is *relevant* evidence in the first place; unless it was actually destroyed or suppressed; and unless it was reasonably foreseeable that the evidence would later be discoverable. See Malinowski v. Documented Vehicle/drivers Systems, Inc. 66 Fed.Appx. 216, 222 (1st Cir. 2003) ("In the few states that recognize an independent tort for spoliation of evidence, courts have required, inter alia, that a party show a causal relationship between the act of spoliation and the inability of the complainant to prove her lawsuit."); Wong v. Thomas, Civil No. 05-26588, 2008 WL 4224923 at * 2 (D.N.J. Sept. 10, 2008) (unpublished); Jimenez-Sánchez v. Caribbean Rest., LLC, 483 F.Supp.2d 140, 143 (D.P.R 2007).

### 7.     Due Process Violations

In order to survive a motion to dismiss, plaintiff must allege sufficient facts to show that he has a plausible entitlement to relief. See Iqbal, 129 S.Ct. at 1949. Section 1983 requires three elements for liability: deprivation of a right, a causal connection between the actor and the deprivation, and state action. 42 U.S.C. § 1983. See Sanchez v. Pereira-Castillo, 590 F.3d 31, 41 (1st Cir., 2009). See also Gómez v. Toledo, 446 U.S. 635 (1980); Daniels v. Williams, 474 U.S. 327 (1986); Romero Barceló v. Hernández Agosto, 75 F. 3d 23, 32 (1st Cir. 1996); Gutierrez-Rodríguez v. Cartagena, 882 F.2d 553, 558 (1st Cir. 1989). Plaintiff's complaint establishes neither.

As a prerequisite to a due process claim, a plaintiff must demonstrate the existence of a constitutionally cognizable life, property or liberty interest. See Paul v. Davis, 424 U.S. 693 (1976); Romero-Barcelo v. Hernández-Agosto, 75 F.3d 23, 32 (1st Cir. 1996). "[W]here allegations of life or liberty deprivation are absent, as in the instant case, the *sine qua non* of a due process clause claim

-27-

under § 1983 is that the state official causes a property loss under color of state law." Pagán-Cuebas

v. Vera-Mornroig, 91 F. Supp. 2d 464 (D.P.R. 2000).  However, as stated by the Supreme Court in

the case of Board of Regents of State Colleges v. Roth:

> [t]o have a property interest in a benefit, a person clearly must have more than an
> abstract need or desire for it.  He must have more than a unilateral expectation of it.
> He must, instead, have a legitimate claim of entitlement to it.  It is a purpose of the
> ancient institution of property to protect those claims upon which people rely in their
> daily lives, reliance that must not be arbitrarily determined.  It is the purpose of the
> constitutional right to a hearing to provide an opportunity for a person to vindicate
> those claims.

Id., 408 U.S. 564, 577 (1972).  See also Bishop v. Wood, 426 U.S. 341 (1976) (stating that the

sufficiency of a claim of entitlement to a property interest in public employment must be measured

by, and decided with reference to, local law); Romero-Barceló v. Hernández Agosto, 75 F.3d 23, 32

(1996).  Accordingly, in the absence of a legitimate proprietary interest, plaintiff's due process claim

fails.  See Acevedo-Diaz v. Aponte, 1 F.3d 62, fn.1 (1st Cir. 1993) (stating that lack of propriety

interest generally precludes due process claims); Pagán-Cuebas, 91 F. Supp. 2d at 470-72.

    While plaintiff generally avers violations to her due process rights, the Complaint nowhere

states the life, liberty or property interest at stake.  From the face of the Complaint, and in light of

the nature of plaintiff's contentions, it is evident there is none.  That plaintiff claims to have needed

some e-mails López purportedly erased does not translate into her having a congnizable and

actionable property interest in the same.

    Additionally, as noted above, in order to state a claim under § 1983 plaintiff must properly

plead state action.  The state action requirement has two components: "First, the deprivation must

be caused by the exercise of some right or privilege created by the State or by a rule of conduct

imposed by the state . . . .  Second, the party charged with the deprivation must be a person who may

-28-

fairly be said to be a state actor." <u>Lugar v. Edmondson Oil Co.</u>, 457 U.S. 922, 937 (1982).  While, drawing all reasonable inferences in Plaintiff's favor, it may be fairly said she meets the state action requirement as to the GDB and Camba and López (by virtue of their being officers of the GDB) such is not the case as to Rexach who is not a government employee.  From the face of the Complaint, Rexach has been legal counsel representing the GDB and López in Camba in the various claims Rodríguez has filed against them.  She is, therefore, not a state actor.

      **8.**     **Civil Conspiracy**

          **a.**     **Generally**

     Throughout the Complaint, plaintiffs makes repeated references to an alleged conspiracy without specifying anything as to the same.  The present complaint does not even allege the legal elements of a conspiracy.  There is nothing regarding the period, object, or acts taken in furtherance of the conspiracy.  Such a claim, if indeed averred, should, be dismissed against all defendants.  <u>See</u> <u>Humphrey v. John Doe Officer One</u>, No. 1:09-cv-1689, 2010 WL 1576464, at *4 -5 (M.D.Pa., Apr. 20, 2010);  <u>Grigsby v. Kane</u>, 250 F.Supp.2d 453, 458 (M.D.Pa.2003) (holding that plaintiff must allege the period, object, and acts taken in furtherance of a conspiracy to defeat a motion to dismiss); <u>Loftus v. Se. Pa. Transp. Auth.</u>, 843 F.Supp. 981, 986 n. 8 (E.D.Pa.1994) (citing <u>Black & Yates, Inc.</u> <u>v. Mahogany Ass'n, Inc.</u>, 129 F.2d 227, 231 (3d Cir.1941) ("A general allegation of conspiracy without a statement of the facts is an allegation of a legal conclusion and insufficient of itself to constitute a cause of action.")).  Much like the situation presented in <u>Twombly</u>, where plaintiff failed show some "setting suggesting the agreement necessary to make out a claim under § 1 [of the Sherman Act]" or " the circumstances pointing towards a meeting of the minds," Rodríguez's naked

assertions of conspiracy in the instant case "stop short of the line between possibility and plausibility of 'entitle[ment] to relief." 550 U.S. at 557 & 564-66.

       **b.**    **§ 1985**

"To establish a claim for civil conspiracy under § 1985(3), a plaintiff must demonstrate (1) the existence of a conspiracy, (2) a purpose of depriving a person or class of persons of equal protection of the laws, (3) an act in furtherance of a conspiracy, and (4) an injury to person or property or a deprivation of a right or privilege granted to U.S. citizens." Green v. Benden, 281 F.3d 661, 665 (7th Cir.2002). "The function of § 1985(3) is to permit recovery from a private actor who has conspired with state actors." Fairley v. Andrews, 578 F.3d 518, 526 (7th Cir.2009). See also Adams v. Teamsters Local 115, 214 Fed. Appx. 167, 172 (3d Cir.2007). However, in order to survive a 12(b)(6) motion to dismiss, a Complaint's "factual allegations [regarding the alleged conspiracy] must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555, 556 n. 3). See also Humphrey, 2010 WL 1576464, at *4 -5. Where, as in this case, the existence of a conspiracy, under § 1985 or otherwise, is based only on legal conclusions, rather than factual allegations, a plaintiff's complaint fails to meet the pleading standard announced by the Supreme Court in Twombly and Iqbal. With respect to the claim under 42 U.S.C. §1985, plaintiff does not aver, let alone offer any factual support for any one of the listed elements.

       **c.**    **In the alternative, Plaintiff's conspiracy claim is barred by the intracorporate conspiracy doctrine**

"It is basic law of conspiracy that you must have two persons or entities to have a conspiracy." Nelson Radio & Supply Co. v. Motorola, Inc., 200 F.2d 911, 914 (5th Cir., 1952). The intracorporate conspiracy doctrine originated in and grew out of antitrust case law, see id., and basic agency principles that "attribute the acts of agents of a corporation to the corporation, so that all of

-30-

their acts are considered to be those of a single legal actor." <u>Dickerson v. Alcahua County Commission</u>, 200 F.3d 761, 767 (11th Cir., 2000) (citing <u>Dussouy v. Gulf Coast Inv. Corp.</u>, 660 F.2d 595, 603 (5th Cir., 1981)). It stands for the proposition that "a corporation *cannot conspire with itself* any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation." <u>Nelson</u> at 914 (emphasis added). Thus, the "multiplicity of actors necessary to conspiracy is negated when the agents' acts are attributed to the corporation and the corporation and its agents are viewed as a single legal actor." <u>Dickerson</u> at 767 (citing <u>Dusssouy</u> at 603). The doctrine applies to public governmental entities. See <u>id.</u> at 767. Insofar as plaintiff suggests that López conspired with the GBD (a public corporation, and Camba), and both López and Camba, as GDB officers and employees of the GDB are also its agents, the doctrine applies in the instant case to bar plaintiff's conspiracy suit.

### 9.    Collateral Estoppel

Collateral estoppel (or issue preclusion) prevents a party from relitigating issues that have been previously adjudicated. See <u>Enica v. Principi</u>, 544 F.3d 328, 336 (1st Cir.2008); See also <u>Gonzalez Pina v. Rodríguez</u>, 407 F.3d 425 (1st Cir. 2005). The doctrine serves the twin goals of "protecting litigants from the burden of relitigating an identical issue" and "promoting judicial economy by preventing needless litigation." <u>Parklane Hosiery Co. v. Shore</u>, 439 U.S. 322 (1979). Collateral estoppel may be applied where "(1) the issue sought to be precluded in the later action is the same as that involved in the earlier action; (2) the issue was actually litigated; (3) the issue was determined by a valid and binding final judgment; and (4) the determination of the issue was essential to the judgment." <u>Ramallo Bros. Printing, Inc. v. El Dia, Inc.</u>, 490 F.3d 86, 90 (1st Cir.2007). The central question is "whether a party has had a full and fair opportunity for judicial

-31-

resolution of the same issue." <u>Rodríguez García v. Miranda Marín</u>, 610 F.3d 756, 771 (1ˢᵗ Cir. 2010) (quoting <u>Fiumara v. Fireman's Fund Ins. Cos.</u>, 746 F.2d 87, 92 (1st Cir. 1984)). Courts have also recognized that collateral estoppel is "no longer limited to ultimate issues: necessary intermediate findings can now be used to preclude relitigation." <u>Biggins v. Hazen Paper Co.</u>, 111 F.3d 205, 210 (1st Cir.1997).

As will be shown below, an analysis of each of the four elements required to apply the doctrine of collateral estoppel (issue preclusion) operates in favor of its applicability to the instant case.

      a.     **Identity of issues**

This requirement refers to whether the issue sought to be precluded is the same as that which was involved in the prior proceeding. The appearing co-defendants respectfully submit that the issue related to the alleged destruction of electronic evidence by López is the same issue previously adjudicated by the United States District Court for the District of Puerto Rico in <u>Rodríguez I</u>. In that case, a deposition was taken of co-defendant López, in which she testified that, in the normal course of business, she had to delete emails to ensure her inbox did not become full. <u>See</u> Exhibit A at 70-71. Shortly thereafter, as Plaintiff herself admits in her Complaint, she "promptly brought to the attention of the District Court her concern over GDB's [alleged] deliberate destruction of relevant electronic documents." <u>See</u> Complaint at ¶ 22. To such effects, on September 3, 2009, Plaintiffs filed a Motion for Order of Preservation and Request for Second Protective Order (hereinafter Motion for Preservation), in which they alleged that during López' deposition, she testified to "routinely delete[ing] e-mail communications, in a seemingly in-discriminatory fashion." <u>See</u> <u>Rodríguez I</u>, Dkt. No. 135, Exhibit B. This is the same allegation brought forth in the instant case. Subsequently, on

September 11, 2009, Defendants filed an Opposition to Plaintiffs' Motion for Preservation. See Rodríguez I, Dkt, No. 145; Exhibit C. In their Opposition, defendants denied any allegation of spoliation of evidence and argued that Plaintiff had failed to identify what had been destroyed, if any, its relevance to the case, or Defendant's knowledge regarding the relevance of such so-called evidence at the time of the alleged spoliation. Defendants further argued that Plaintiffs had failed to articulate any particular intent or bad faith on the part of Defendants, or prejudice to Plaintiffs. See Rodríguez I, Dkt. No. 145, Exhibit C.

On September 21, 2009, after the controversy had been squarely raised, the District Court issued an Order **denying** Plaintiff's Motion for Preservation. In essence, the Court held that co-defendant López' statement that, in the ordinary course of business, she deletes emails to prevent her inbox from becoming full did not support the conclusion, by itself, that evidence had been destroyed since the Defendants had received notice of the Plaintiff's case. Moreover, the District Court held that Plaintiffs had not presented any evidence suggesting that Defendants, upon receiving notice of the Plaintiff's claim, had destroyed any evidence. See Rodríguez I, Dkt. No. 169, Exhibit D.

Undaunted, on September 28, 2009, Plaintiffs filed an interlocutory Notice of Appeal seeking review, amongst others, of the interlocutory order issued by the District Court denying their Motion for Preservation. See Rodríguez I, Dkt. No. 172, Exhibit E. After the respective briefs of appellant and appellees were filed, on June 10, 2010, the Court of Appeals for the First Circuit, issued Judgment dismissing the Appeal. Specifically, the Court of Appeals held that the District Court's order denying Plaintiff's Motion for Preservation was an interlocutory order not subject to

-33-

interlocutory appellate review and, thus, dismissed that part of the Appeal for lack of jurisdiction.[4] See Rodríguez I, Dkt. No. 292, Exhibit F.

On February 23, 2010, Rodríguez I was dismissed on summary judgment. See Rodríguez I", Dkts. No. 266-267; Exhibit G. Subsequently, on March 9, 2010, Plaintiffs filed a Notice of Appeal seeking review of the District Court' summary dismissal of the case. See Rodríguez I, Dkt. No. 270; Exhibit H.  In her brief, she presents arguments regarding the issue of spoliation of evidence. See U.S.C.A. No. 10-1441, Pl Brief at 19-20, 57-65.  However, on July 19, 2010, the appeal was held in abeyance until Plaintiff explained the Court of Appeals why they had standing to pursue the appeal, notwithstanding Plaintiff's bankruptcy petition. See Appeal No. 10-1441, Order dated July 19, 2010; Exhibit I.

Now, in the instant case, Plaintiff, based on the same portion of co-defendant López's deposition testimony, alleges, once again, that defendants engaged in spoliation of evidence and set forth multiple causes of action based on the same set of facts.  Consequently, the identity of issue requirement is clearly satisfied in order to apply the doctrine of collateral estoppel (issue preclusion) to the present case.

> **b.     Actuality of litigation**

This requirement refers to whether the point at issue was actually litigated in the earlier proceeding.  As discussed above, each of the parties had opportunity to set forth their respective positions regarding the "issue" of the alleged destruction of evidence and the impact of López's testimony, not only before the District Court, but, more recently, also before the Court of Appeals for the First Circuit. See Rodriguez I, Dkt. Nos. 135, 145, 169, 266 and 292; Exhibits B, C, D, F and

---

[4] With respect to the other part of the Appeal, the Court of Appeals affirmed the District Court's decision to summarily deny both of Plaintiff's preliminary injunction requests.

-34-

G. "When an issue of fact or law is actually litigated and determined . . . , the determination is conclusive . . . ." Restatement Second of Judgments, 1981, § 27. In this case, after considering the positions of the parties, the District Court determined that no spoliation had occurred. Consequently, the actuality of litigation requirement is also satisfied.

        c.       **Finality of the earlier resolution**

This requirement refers to whether the issue was determined by a valid and binding final judgment or order. The fundamental rationale of issue preclusion dictates the clearly settled requirement that it be limited to matters that have been actually decided. The purposes of issue preclusion are only to avoid the burdens and potentially disruptive consequences of permitting a second and possibly inconsistent determination of matters that have been once decided. See Wright & Miller, 18 Fed.Prac. & Proc.Juris 4420 (2d ed., 2010). "Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits ...." Montana v. U. S., 440 U.S. 147 (1979).

"It is widely recognized that the finality requirement is less stringent for issue preclusion than for claim preclusion." See Christo v. Padgett, 223 F.3d 1324, 1339 (11th Cir. 2000) (internal citations omitted). "[F]or purposes of issue preclusion ..., 'final judgment' includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect." See Christo v. Padgett, 223 F.3d 1324, 1339 n. 47 (11th Cir.2000) (citing Restatement (Second) Judgments § 13 (1980)). Criteria for determining whether a decision is firm include whether the parties were "fully heard." Id. In order for those prior rulings to be given collateral estoppel effect, however, it is not necessary for them to be final orders for purposes of appeal. See Christo, 223 F.3d at 1338-40. The test for finality is whether the prior decision was "adequately deliberated and firm"

-35-

or "avowedly tentative," and whether the parties were fully heard in the prior proceeding. See Restatement (Second) Judgments § 13, cmt. g (1980).

As indicated above, on September 21, 2009, the District Court issued an Order denying Plaintiff's Motion for Preservation. Specifically, the District Court determined that defendants had not incurred in such conduct and that Plaintiffs allegations of spoliation did not support the conclusion that evidence had been destroyed since the Defendants had notice of the Plaintiff's case. Moreover, the District Court held that Plaintiffs had not presented any evidence suggesting that Defendants, upon receiving notice of the Plaintiff's claim, had destroyed any evidence. See Rodríguez I, Dkt. No. 169, Exhibit D. This interlocutory Order was initially appealed and dismissed for lack of interlocutory appellate jurisdiction. See Rodríguez I, Dkt. No. 292, Exhibit F. Subsequently, the District Court granted Defendants motion for summary judgment and dismissed Rodríguez I. See Rodríguez I, Dkt. No. 266, Exhibit G. The summary judgment dismissing Rodríguez I gave binding and conclusive effect to the District Court's adjudication of the issue of spoliation of evidence. Although Plaintiffs has, again, raised this issue before the First Circuit Court of Appeals, see U.S.C.A. No. 10-1441, Pl's Brief at 19-20, 57-65, revision of the order denying their *Motion for Preservation,* such fact does not impede the application of the issue preclusion doctrine. As the First Circuit Court of Appeals held in the case of In re Kane, 254 F.3d 325 (1ˢᵗ Cir. 2001), "[t]he general rule [of issue preclusion] applies ... even where the first ... judgment is still on appeal when the second action occurs." Id. at 328.

In view of the above, Defendants respectfully contend that collateral estoppel's "finality of earlier resolution" requirement is satisfied in the present case.

-36-

d.      **Centrality of the adjudication**

Also known as the "necessarily decided" element of collateral estoppel, this requirement refers to whether the determination of the issue in the prior proceeding was essential to the final judgment or order.  It means that an issue was not only actually decided but also necessary to the judgment. See Restatement (Second) of Judgments § 27 (determination must be "essential to the judgment"). The reason for this condition is that a collateral issue, although it may be the subject of a finding, is less likely to receive close judicial attention and the parties may well have only limited incentive to litigate the issue fully since it is not determinative. See Wright, Miller & Cooper, Federal Practice and Procedure § 4421 at 193 (1981 ed.). Under these circumstances, extending the force of the unnecessary finding into a different case is deemed too risky and possibly unfair. However, an analysis of the discussion above, demonstrates, without a doubt, that the determination regarding the alleged spoliation of evidence in Rodríguez I was essential to the District Court's order denying Plaintiff's *Motion for Preservation* and also to the order granting defendants motion for summary judgment. The District Court issued findings of fact and conclusions of law with respect to the alleged spoliation of evidence. Furthermore, the alleged spoliation issue was one of the issues on appeal raised by Plaintiffs. Consequently, the appearing co-Defendants respectfully contend that the collateral estoppel's "centrality of the adjudication" requirement is also satisfied in the present case.

It should be noted, however, that although Plaintiff apparently limited her rehashed spoliation-of-evidence allegation to her causes of action under articles 1802 and 1803 of the Puerto Rico' Civil Code, the spoliation argument is clearly the gist of Plaintiff's other causes of action. Plaintiff's assertion of new causes of action, however,  does not constitute an obstacle for the

application of the collateral estoppel (issue preclusion) doctrine, as long as the new causes of action are based on the same facts already decided, i.e., the spoliation of evidence argument, as it is in the present case. To such effects, the U.S. Supreme Court has recognized that under collateral estoppel, once court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of issue in suit on different cause of action involving party to first case. <u>Allen v. McCurry</u>, 449 U.S. 90, 94 (1980). Consequently, defendants respectfully request this Honorable Court to dismiss the instant complaint, in its entirety, based on the doctrine of collateral estoppel (issue preclusion).

**C. Request for Sanctions**

The filing of the present adversary proceeding constitutes an abuse of process. Plaintiff and he counsel continue to present this Court with half-truths and blatant misrepresentations. Such conduct is in violation of Rule 9011 of the Federal Rules of Bankruptcy Procedure and an affront to the integrity of the judicial process. This time, their improper conduct has gone as far as implicating a member of this Court's bar with illegal and unethical conduct, without any factual or legal foundation, all in an attempt to deprive the GDB of its legal counsel and/or extract pay-back for the disclosures made to this Court regarding Plaintiff's and her attorney's previous misrepresentations in a variety of different fora. We pray the Court to take strong action to stop this abuse of process and reimburse defendants for the unreasonable costs incurred in defending against the same.

**CONCLUSION**

In <u>Twombly</u> the Supreme Court reiterated the practical significance of Rule 8's entitlement to relief requirement. "[S]omething beyond the mere possibility of loss causation must be alleged,

-38-

lest a plaintiff with 'a largely groundless claim' be allowed to ' take up the time of a number of other

people, with the right to do so representing an *in terrorem* increment in the settlement value.'" 550

U.S. at 557-558 (quoting <u>Dura Pharmaceuticals, Inc. v. Broudo</u>, 544 U.S. 336 (2005), and <u>Blue Chip</u>

<u>Stamps v. Manor Drug Stores</u>, 421 U.S. 723, 741 (1975)).  The present adversary proceeding fits this

definition to the "t."  It is but another in the multitude of anemic cases plaintiff has filed against the

GDB and its officers in the hopes that harassment will lead to substantial settlement.  It is so fatally

defective, that further amendment would be futile.  It should, accordingly, be dismissed for lack of

jurisdiction and failure to state a claim.

WHEREFORE, the GDB and Rexach respectfully requests that this Court dismiss the present

adversary Complaint for lack of jurisdiction and/or failure to state a claim.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, this 21ˢᵗ day of September 2010.

CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that on this same date, the foregoing was filed with the Clerk

of the Court using the CM/ECF system which will send notification of such filing to CM/ECF

participants, and caused it to be served on the next business day via a third party court authorized

noticing provider BK Attorney Services to: William Meléndez, Esq., 410 Park Avenue 15th Floor

#1223, New York, NY  10022.

|  |  |
|---|---|
| **SCHUSTER AGUILÓ LLP**<br>PO Box 363128<br>San Juan, Puerto Rico 00936-3128<br>Tel: (787) 765-4646; Fax: (787) 765-4611 | **SONIA COLÓN LAW OFFICES, P.A.**<br>P.O. Box 621597<br>Orlando, Florida 32862-1597<br>Telephone: 407-574-8272<br>Facsimile: 888-537-4536 |
| **s/ Andrés C. Gorbea Del Valle**<br>Andrés C. Gorbea Del Valle<br>USDC PR No. 226313<br>agorbea@salawpr.com | **s/ Sonia E. Colón**<br>SONIA E. COLÓN<br>USDC PR No. 213809<br>sonia@soniacolonlaw.com |